## GRUBER et al. v. SAVANNAH RIVER LUMBER CO.

(Circuit Court of Appeals, Fourth Circuit. October 25, 1924.)

No. 2263.

Estoppel ⟨⟩78(3)—Subsequent landowner estopped from claiming he was not proper party to receive renewal money under timber deed.

Where timber rights were conveyed for 15 years, with right to renew for 5 years by paying interest to grantor, and before expiration of 15 years land was conveyed, and subsequent owner accepted interest for 1 year, he was estopped from claiming that he was not proper party to receive it, under rule that, where both parties to contract act on certain construction of it, that construction is controlling.

Appeal from the District Court of the United States for the Eastern District of South Carolina, at Charleston; Ernest F. Cochran, Judge.

Suit by the Colleton Mercantile & Manufacturing Company against W. B. Gruber and the Savannah River Lumber Company. Decree for defendant last named, and against defendant first named, and plaintiff and defendant first named appeal. Affirmed on opinion of District Judge.

The following is the opinion of Ernest F. Cochran, District Judge in the court below:

"This case was originally commenced in the state court, and removed to this court by the Savannah River Lumber Company. An injunction was issued from this court restraining the parties from proceeding in the state court, and upon appeal from the in-

junction, the Circuit Court of Appeals for this circuit held that there was a separable controversy as to the Savannah River Lumber Company, which could be removed, and that the interests of the defendant W. B. Gruber and of the plaintiff, the Colleton Mercantile & Manufacturing Company, were identical, as against the defendant the Savannah River Lumber Company, and that the parties should be arranged as to the separable controversy in accordance with their real interests. Colleton Mercantile & Manufacturing Co. v. Savannah River Lumber Co., 280 F. 358.

"After the mandate had been received from the Circuit Court of Appeals, the parties to this case entered into a stipulation in writing, under the terms of which it was agreed that the only issue for trial in this matter is the conflicting claim of title to the timber on tract No. 4 described in the complaint, known as Rotherwood plantation, between W. B. Gruber and the Colleton Mercantile & Manufacturing Company, on the one hand, and the Savannah River Lumber Company, on the other hand, and that the Colleton Mercantile & Manufacturing Company, the purchaser from W. B. Gruber, should be represented by W. B. Gruber in the determination of this issue; the said W. B. Gruber for that purpose being considered as the plaintiff herein, and the said Colleton Mercantile & Manufacturing Company shall be bound by the adjudication of the title when and as the same is made by the court. It was further provided by the stipulation that the conflicting claims of title on this issue should be submitted to the District Judge for determination, under the agreed statement of facts set forth in the stipulation and the testimony of the witnesses taken before the special master without the intervention of a jury; a jury trial being waived.

"The stipulation has been filed as a part of the record, and all the facts stipulated and set forth in the stipulation are adopted and found as facts by the court, whether specifically set forth in this decree or not. The question before the court for decision is whether the title to certain timber on the tract of land known as 'Rotherwood' is in the defendant W. B. Gruber (now treated as the plaintiff), or the defendant the Savannah River Lumber Company. For convenience, the defendant Savannah River Lumber Company will hereinafter be referred to as the Lumber Company.

"Mr. Gruber and the Lumber Company claim title through a common source, to wit, M. E. Bellinger and others, who, for con-

venience, will hereinafter be referred to as the Bellingers. On June ——, 1902, the Bellingers executed a deed to the Charleston Lumber Company, conveying the timber on the tract of land mentioned, and by subsequent mesne conveyances and a judicial sale, all the rights of the Charleston Lumber Company passed to the Savannah River Lumber Company. The deed is dated 'this —————— day of June, A. D. 1902,' but it is probated on the 3d of June, A. D. 1902, and therefore must have been executed not earlier than the 1st of June and not later than the 3d of June, 1902. The deed contains the following provision:

" 'The said Charleston Lumber Company shall have the term of 15 years within which to cut and remove said timber from the date hereof, and shall have an additional term of 10 years within which to cut and remove said timber, on paying to us, the said M. E. Bellinger, C. Bellinger, L. Bellinger, and L. Bellinger, trustee, at the end of every year of renewal, interest at 6 per cent. on the purchase money aforesaid.'

"In July, 1912 (before the original 15-year term had expired), the Bellingers brought a partition suit in the court of common pleas for Colleton county, and in that proceeding the land in question was sold by decree of the court by the sheriff, and a deed made by the sheriff to one B. G. Price, and by subsequent conveyances the title to the said tract of land passed to the defendant W. B. Gruber. The deed in the partition proceeding executed by the sheriff to B. G. Price contained the following provision:

" 'Together with all and singular the rights, members, hereditaments, and appurtenances to the said premises belonging, or in any wise incident or appertaining, and all the estate, right, title, claim, and interest whatever, of the parties to the cause aforesaid, and of each of them, in and to the same, and of all other persons rightfully claiming from, under, or by them, or any of them.'

"On July 13, 1916, Mr. Gruber wrote the Lumber Company concerning his construction of the Bellinger deed, as to the nature of the timber granted and the reservation of pine for plantation purposes, and on July 16, 1916, the Lumber Company replied, stating in substance that they expected Mr. Gruber to confine himself strictly within his legal rights. These letters did not touch upon the present controversy, and in my view are immaterial, except for the purpose of showing that at that time both parties knew of their respective claims; i. e., the claim of

Mr. Gruber to be the owner of the land, and the claim of the Lumber Company to be the owner of the timber rights under the Bellinger deed, and that the rights of the parties were to be ascertained by reference to the Bellinger deed.

"On April 12, 1917 (after Mr. Gruber had acquired the land, but before the expiration of the original 15-year limitation for the removal of the timber), the Lumber Company, through W. J. Broadhurst, one of its agents, tendered Mr. Gruber the sum of $30 (this being one year's interest at 6 per cent. on the original price of $500) and requested his signature to a receipt therefor which had been prepared by the Lumber Company in typewritten form. Mr. Gruber accepted the $30 and signed the receipt, but added in his own handwriting the following words, 'the company desiring renewal for the one year as above stipulated.'

"The receipt with the added words is as follows:

" 'Received of the Savannah River Lumber Company thirty ($30.00) dollars for the extension of the timber purchased by the Charleston Lumber Company from M. E. Bellinger, C. Bellinger, L. Bellinger, and L. Bellinger, as trustee for M. E. Bellinger and as trustee for Sallie C. Bellinger, for and in consideration of five hundred ($500.00) dollars, dated June ——, 1902, and recorded in the Deed Records of Colleton county, South Carolina, in Book 21, page 278, to which reference is hereby made; the above thirty ($30.00) dollars being 6 per cent. of the amount stated in said deed, and is the amount stipulated therein for one year's renewal thereof; I being the present owner of the lands on which said timber is located, and the Savannah River Lumber Company being the present owners of the timber above stated, *the company desiring renewal for the one year as above stipulated.* (Italics do not appear in receipt.)

" 'Witness my hand and seal this 12th day of April, A. D. 1917.

" 'W. B. Gruber,    [L. S.]'

"The signature to this receipt is witnessed by two witnesses, and there is an affidavit of one of the witnesses, dated April 12, 1917, proving the execution of the receipt in the form usual in the probate of deeds in this state. Both in the original receipt and in the jurat to the probate, the date of the month is left blank, and the original typewritten part has 'March'; but, as it appears after execution, the day of the month is written in, in pen and ink, with the figures '12,' and 'March' is stricken out and the word

'Apr.' written in, in pen and ink. In the receipt the figures '12' and the word 'Apr.' appear to be in the handwriting of Mr. Gruber, but in the probate the figures '12' and the word 'Apr.' appear to be in the handwriting of M. P. Howell, notary public, before whom the affidavit was subscribed and sworn to.

"There was a conflict between the testimony of Mr. Gruber and Mr. Broadhurst as to whether the additional words were interlined before or after the signature was made, but the stipulation recites that these words were inserted by Mr. Gruber in his own handwriting before signing the same, and I therefore find that to be the fact, although in my view of the case it is immaterial whether Mr. Gruber made the interlineation before or after the signing of the receipt, as it was certainly made by him and made at the time the money was paid, and before the transaction was consummated by a final delivery of the receipt.

"There is also a conflict between the testimony of Mr. Gruber and Mr. Broadhurst as to whether a receipt presented to Mr. Gruber some time previous to April 12th was the same paper that was finally signed or a different one. Mr. Gruber testifies in substance that it was a different one, and that he refused to sign it because it made substantial changes in the original Bellinger deed. Mr. Broadhurst says it was the same paper, and that he never presented but the one paper to Mr. Gruber. In my view of the case, it is immaterial whether it was the same paper or not; but I shall hereafter show that, if a different paper was presented, such inferences as would properly be drawn from that fact are rather unfavorable to the contention of Mr. Gruber than otherwise.

"On May 5, 1917 (a month before the original 15-year period expired), the Lumber Company served on Mr. Gruber the following notice:

" 'State of South Carolina, County of Colleton.

" 'To W. B. Gruber, Esq.: You will please take notice that the undersigned, Savannah River Lumber Company, the successor in title to the timber, rights and privileges granted by M. E. Bellinger, C. Bellinger, L. Bellinger, as trustee for M. E. Bellinger, and as trustee for Sallie C. Bellinger, to the Charleston Lumber Company, by deed dated the ——— day of June, 1902, and recorded in the office of the clerk of Colleton county in Book 21, page 278, hereby gives you notice that it intends to avail itself of the clause in said deed which grants an additional term

of ten (10) years after the expiration of fifteen (15) years from the date of said deed within which to cut and remove said timber, and to exercise the rights and privileges granted in said deed, and that it intends to avail itself of and use the entire term of ten (10) years from the 25th day of June, A. D. 1917.

" 'Said Savannah River Lumber Company has heretofore paid and holds your receipt for interest at 6% (six per cent.) on the amount of the purchase money mentioned in said deed, to wit, the sum of thirty and 00/000 dollars for the year ending June 25, 1918, and binds itself and its successors to make the annual payments as in said deed provided. Respectfully, Savannah River Lumber Company, by W. H. Andrews, Vice President. [L. S.]'

"On May 11, 1917, Mr. Gruber wrote, in reply to that notice, the following letter:

" 'Walterboro, S. C., May 11, 1917.

" 'Savannah River Lumber Company, Savannah, Ga.—Dear Sirs: Your notice with reference to the rights and privileges granted to the Charleston Lumber Company under the terms of the deed of M. E. Bellinger and others was handed me by Mr. Moorer, one of your attorneys, on the 5th instant. On the 12th of April your agent paid me $30 for a renewal for one year, stating that the company desired a renewal for that period, and took from me a written instrument, in the nature of a receipt, to that effect. Having at that time given me notice of a desire to renew for one year, and the transaction having been closed upon that basis, I deny your right to reopen the matter at this time and renew for a longer period.

" 'Very truly yours, W. B. Gruber.'

"On May 31, 1918, the Lumber Company tendered to Mr. Gruber the sum of $30, and a like sum before the 1st of June in each subsequent year, all of which sums were refused by Mr. Gruber. The $30 paid on April 12, 1917, has never been tendered back or repaid to the Lumber Company by Mr. Gruber, and no demand for such repayment has been made by the Lumber Company upon him. The Lumber Company has not tendered back to Mr. Gruber the receipt which he gave, nor has Mr. Gruber demanded such receipt of the company. No tender of the renewal money has ever been made by the Lumber Company to the Bellingers, or any of them, nor have the Bellingers, or any of them, ever made any claim upon or demand for the same.

"Mr. Gruber contends that, from the facts,

the rights of the Lumber Company have lapsed, and that they now have no interest whatever in the timber in question, nor any right to enter upon the land to remove the same. The Lumber Company contends that by the payment of the renewal interest on April 12, 1917, and subsequent tenders of like amounts, their right to take the timber from the land has been extended for a period of 10 years in addition to the original 15-year period granted by the Bellinger deed. The case has been argued orally and counsel on both sides have furnished me with briefs with reference to many cases, all of which have been carefully considered. I shall, however, refer only to such cases as in my view are controlling or pertinent.

"Mr. Gruber's first point is that under the Bellinger deed, the reservation of the renewal interest for the extension is to the Bellingers, and not to their heirs or assigns, and that he is not the proper person to receive the renewal interest, and no renewal interest having been paid or tendered the Bellingers, the Lumber Company's rights expired. A number of decisions have been cited, but he relies for this proposition on the case of Richardson v. Cooler, 115 S. C. 102, 104 S. E. 305. Even if this court should take a different view of the law as laid down by the Supreme Court of South Carolina, nevertheless, in this case, the court in construing this contract, would feel bound to apply the law as announced by that court. But a careful study of the Cooler Case and a comparison with other cases has convinced the court that the South Carolina Supreme Court has not laid down the law as broadly as contended for by Mr. Gruber. Before discussing the Cooler Case and other cases, it seems to the court that any person of ordinary intelligence, and with a fair knowledge of the law and legal analogies, would, upon reading the original Bellinger deed, arrive at the conclusion that the parties evidently had in mind that the grantee might find that the original 15-year period was insufficient, and that the parties had therefore provided that in such case he would have an option to obtain an additional term of 10 years at the payment of the renewal interest provided for, but that he would have no absolute right to that additional time until the option was exercised by the payment of the renewal interest. So that his additional or further right of removal would pass to and become vested in him at the time of the payment of the renewal money.

"I think that such person would also conclude that the case was in the nature of a lease, and the renewal interest analogous to rent, and that the parties would reasonably be supposed to have intended, in case the grantor sold the land to another before the expiration of the original 15-year period without any express reservation of the renewal money, that the renewal money should be paid to the person who might own the land at the time it was due.

"The analogy of the case to rent is very strong. In at least three cases in this state, such a contract has been compared to a lease. Thus, in Minshew v. Lumber Co., 98 S. C. 24, 81 S. E. 1032, in construing a similar contract, the court said: 'The contract was in the nature of a lease.' So, also, in Fairfield Timber Co. v. Simmons, 108 S. C. 324, 94 S. E. 492, the court said: 'The time during which the plaintiff is allowed to cut the timber and the amount of compensation for the use of the land are definite and certain, and the * . * * fact that the compensation for the use of the land is payable yearly shows that the transaction is in the nature of a lease.'

"Likewise in United Timber Corporation v. Chapman, 121 S. C. 225, 114 S. E. 320, the court, reviewing Fairfield v. Simmons, said: 'The court held that Simmons, the landowner, was entitled to the money as compensation for the use of his land for the additional period of time, the transaction being in the nature of a lease. In this connection, see, also, the case of Richardson v. Cooler, 115 S. C. 102, 104 S. E. 305.' It is to be noted that this case of United Timber Corporation v. Chapman was decided after Richardson v. Cooler, and refers to it in this very connection, so the Supreme Court of South Carolina could not have thought that anything in Richardson v. Cooler was opposed to the view that such contracts were in the nature of a lease.

"In Fairfield v. Simmons, which was followed and approved in United Timber Co. v. Chapman, the main reason for the decision was based upon the analogy to rent, and South Carolina cases were cited to show that rent passed as an incident to the purchaser of the reversion. Indeed, under the definition of rent it is difficult to see why the renewal money paid for the additional right is not a species of rent. The definition of rent is as follows: 'Rent may be defined as a right to a certain profit issuing periodically out of lands and tenements corporeal in retribution for the land that passes.' 2 Min. Inst. 32; 18 Am. & Eng. Encyc. (2d Ed.) 260; 16 R. C. L. 908.

"The original sum paid for the timber

was, under the contract, for the timber and for the right of removal during the original 15-year period; but certainly the renewal money is not a part of the purchase money of the timber itself, but is in payment of the right to enter upon the lands and take the timber therefrom during the additional time. It would therefore fall within the definition of rent. But it is not necessary in this case to hold that it is rent strictly, but under the decisions it is certainly analogous to rent, and in the absence of any reason to the contrary it should be subjected to the same rules as rents.

"It is well settled that rent to accrue is an incident to the reversion, and accompanies the reversion unless separated by an express reservation, and therefore as a general rule upon a transfer of the reversion by the landlord, his transferee is entitled to receive all rent thereafter accruing. 16 R. C. L. 915; 18 Am. & Eng. En. Law (2d Ed.) 281; Moore v. Turpin & Powers, 1 Speers, 33, 40 Am. Dec. 589; Riley v. Snyder, 1 Speers, 272, 40 Am. Dec. 602; Fairfield Timber Co. v. Simmons, 108 S. C. 324, 94 S. E. 491.

"In the case of Fairfield Timber Co. v. Simmons, supra, the timber deed provided for an extension of time for removal by the payment of renewal interest, and also provided that all benefits provided for either of the parties should accrue to their respective administrators, executors, or assigns. It was held that the renewal interest belonged to the owner of the land at the time it was paid, and the decision was rested on three grounds, in the following order:

"(1) By analogy to the law of rent, where rent which is to accrue, passes as an incident to the purchaser of the reversion.

"(2) Because in timber deeds, when the time first provided and paid for has passed, and the grantee can only hold further by reason of the performance of the stipulation for extension, his estate or interest arises *at the time the conditions are complied with,* and in the absence of any provision to the contrary, the price paid belongs to him who *then* has the title, as it is *from his estate that the interest passes,* quoting in support of this proposition from the case of Carolina Timber Co. v. Wells, 171 N. C. 262, 88 S. E. 327, which I shall advert to later.

"(3) That the parties must have intended that the purchaser of the land would be entitled to those rights incidental to the land after a sale thereof; otherwise, the provision that the stipulation and covenant should be binding upon and inure to the heirs, executors, and assigns would be without force and effect.

"In Bethea v. Lumber Co., 111 S. C. 104, 96 S. E. 717, it was held that the simple act of 'payment of interest' operated to extend the right to cut, that the contract was not required to be extended by any other writing but only by an act, and that the payment of the renewal money did not change the contract, but only carried it out. In United Timber Corporation v. Chapman, 121 S. C. 225, 114 S. E. 320, one of the timber deeds in this case contained provisions similar to the deed in the case of Fairfield Timber Co. v. Simmons, and the court held, on the authority of that case, that the renewal interest belonged to the owner of the land.

"In the North Carolina case referred to (Carolina Timber Co. v. Wells, supra) the reservation of the renewal interest was to 'R. A. Wells or his personal representatives.' Wells sold the land to Page, and the court held that Page was entitled to the renewal interest. That court used the following language:

" 'The cases on the subject are to the effect, further, that a stipulation of the kind now presented, providing for an extension of the time within which the timber must be cut, is in the nature of an option, and it is held by the great weight of authority that contracts of this character do not of themselves create any interest in the property, but only amount to an offer to create or convey such an interest when the conditions are performed and working a forfeiture when not strictly complied with [citing cases]. * * * Where the time first provided in one of these timber deeds and paid for has passed, and it becomes necessary for the grantee to hold by reason of the performance of the stipulation for an extension, that the estate or interest arises at the time the conditions are complied with, and, in the absence of any provision in his deed to the contrary, the price paid belongs to him who then has the title and from whose ownership the interest is then created. The option or privilege obtained, to the extent of the right conferred, is a contract attendant upon the title, and, as stated, unless otherwise specified in the deed conveying the title, the price for the interest arising on proper performance of the conditions will inure to the owner. It is from his estate that the interest passes, and he must receive the purchase price.'

"In the case of Carolina Timber Co. v. Bryan, 171 N. C. 265, 88 S. E. 329, where a timber deed provided for extension by payment of money to the 'grantor and his per-

sonal representatives,' and the grantor died, the same court held that the extension money should be paid to his heirs and not to the administrator, basing the decision on the ground (notwithstanding the fact that the deed expressly provided for payment to the 'grantor and his personal representatives') that the provision for extension of time·was an option, an offer to confer the right which matured only at the time the conditions were complied with, and the property being then owned by the heirs and the price to be paid for the interest then arising out of their ownership, it should inure to them.

"Upon reason, principle, and authority, this court would have no difficulty (aside from the case of Richardson v. Cooler) in reaching the conclusion that, under the facts in this case, the renewal money should be paid to the owner of the land at the time of payment, there being nothing in the original timber contract to evidence a contrary intention, and there being no express reservation of the interest money by the Bellingers in the partition suit brought by them or in the sheriff's deed made pursuant to the decree of the court in that proceeding.

"Mr. Gruber, however, contends that Richardson v. Cooler establishes the contrary principle. His contention is that the Supreme Court of South Carolina in that case has established the broad doctrine that where the original timber contract provides for the payment to the grantor by name, and not to him or his assigns, the renewal money should be paid to the grantor, in the absence of any assignment by him of his right to the same, and that a deed to the premises is not a sufficient assignment of the right to the renewal money. But this broad doctrine contended for is, in the opinion of the court, so manifestly against reason and principle, and will, if applied to the extent claimed, lead to injustice in so many cases, that I am not disposed to extend the doctrine further than the facts in the Cooler Case demand.

"In that case, the Coolers, the original grantors, claimed the renewal money. In the case at bar, the Bellingers have never claimed it. The facts in the Cooler Case are substantially as follows:

"Mr. and Mrs. Cooler, who were the father and mother respectively of four sons, conveyed certain timber to the American Lumber & Manufacturing Company, which was Richardson's predecessor in title. The conveyance gave to the company and its assigns 10 years from the date of the deed to remove the timber and 5 years' additional time 'on paying to me, the said Sarah A. Cooler, $60

per annum for each additional year after the first 10 years.' Mr. Cooler's deed contained a like provision for additional time on payment to him of $30 for each additional year after the first 10 years. At the expiration of the 10-year period Richardson paid the renewal money to Mr. and Mrs. Cooler. Before doing so, however, Richardson attempted to ascertain the proper persons to whom the money should be paid, and was informed by Mr. and Mrs. Cooler that they were the proper persons to receive the money. When their attention was called to certain deeds which Mr. and Mrs. Cooler had made to their four sons, Mr. Richardson was informed by them that the deeds had never been delivered, and that these sons would execute an instrument in writing authorizing or ratifying the parents' receiving the renewal money. The money was paid, but the sons refused to execute the instrument, and brought an action for damages against Richardson. They also brought an action to prevent Richardson from cutting the timber. Moreover, the deeds to the sons were so drafted that it was not possible to tell what portion of Mr. Cooler's lands, as distinguished from Mrs. Cooler's lands, had been conveyed to the respective children, nor, if the extension money was payable to the sons, what fractional portion each should receive. Running throughout the case was strong evidence of an attempt to defraud, and a well-founded suspicion could arise that there was collusion between the parents and the sons, in order to work a forfeiture.

"The court held, based on these facts, that the right of Richardson to cut the timber was not defeated nor lost by his failure to pay the renewal money to the sons, who were the owners of the land, instead of to the parents, who were the grantors of the timber. The decision was apparently put upon the ground that it appeared that the parents had not intended to convey to the sons their contractual right to receive the extension money, and that, the original timber contract having specifically named the original grantors as the persons entitled to receive the renewal money, and there being no mention in the original timber contract of their heirs or assigns, they alone would be the persons to whom the renewal money could be paid.

"Under the circumstances shown by the record in the Cooler Case it clearly appears that it would have been a gross fraud upon Richardson, if his title had been defeated in the manner sought by the sons and their parents. The case, of course, must be construed in the light of the facts there present-

ed. The law is what the court actually decided. In the Cooler Case, the deeds by which the Coolers conveyed the land to their children are not set forth, and it cannot be determined whether they contained any provision similar to the provision in the sheriff's deed in the case at bar.

"In the present case, the sheriff's deed not only contains a provision passing all the 'rights,' etc., 'to the said premises belonging or in any wise incident or appertaining,' but also 'all the estate, title, claim, and interest whatever, of the parties to the cause aforesaid, and of each of them in and to the same.' Certainly this language would appear to be broad enough to cover any claim that the Bellingers might have had to the renewal money.

"In the Cooler Case, the conveyances by the Coolers to their children were by deeds inter partes, and their terms are not stated; in the present case, the sale of the premises was in a partition suit, and the presumption, in the absence of anything to the contrary in the partition proceeding, is that this judicial sale carried all the rights and interest of the Bellingers in the premises of every nature whatsoever. There are other features in the Cooler Case which do not appear in this case. In the Cooler Case, the Coolers not only claimed the renewal money, but actually represented to the purchaser of the timber rights that it was not their intention by their deeds to their children to convey their rights to the renewal money, and afterwards (apparently in collusion with their children) took the position that they had no right to the renewal money.

"No court could have looked with any favor upon this inconsistent attitude of the Coolers, father and mother, and there was a strong suspicion that, in adopting this attitude, there was collusion between them and their children. Moreover, in the Cooler Case, in the deeds from the Coolers to their children, the land was so described that it was impossible to tell how much cleared land had been conveyed to each child, or whether some of the tracts conveyed were composed in part of the father's tract and in part of the mother's, and, if so, how many or which of them were so composed, and what the proportions were.

"If the Cooler Case establishes the broad doctrine claimed for it, it is difficult to reconcile it with the previous case of Fairfield Timber Co. v. Simmons, or the later case of United Timber Co. v. Chapman. It is true that in the Cooler Case the court held that in Fairfield Timber Co. v. Simmons the decision was based upon the provisions in the deed in that case to the effect that the benefits, etc., should inure to the heirs and assigns, etc. But it was not based upon that provision alone. It was based upon two other grounds, and the court merely stated, as an additional reason for sustaining its conclusion, that in the absence of a contrary agreement the renewal money should go to the then owner of the land; that to adopt the contrary view would practically nullify the provision as to the heirs and assigns. It is evident from a reading of the case of Fairfield Timber Company v. Simmons that, if the provision referred to had not been in the deed at all, nevertheless the decision of the court upon the grounds previously stated would have been the same.

"The point is made that, in the case of Fairfield Timber Co. v. Simmons and the later case of United Timber Company v. Chapman, the person to whom the renewal money was to be paid was not specifically stated, while in the Cooler Case and in the case at bar the person is specifically named, to wit, the grantor himself. I cannot see how this distinction is a sound one. It is clear that, although the grantor in the case of Fairfield Timber Co. v. Simmons and of United Timber Co. v. Chapman was not specifically named as entitled to the renewal money, nevertheless, if the grantor in each of those cases had never conveyed the land, there could have been no doubt that he was entitled to the renewal money.

"If some other person than the grantor had been named specifically as the person to whom the renewal money should be paid, there might be some force in the argument; but the naming of the grantor specifically as the person entitled thereto did not in effect add anything to his rights, for certainly, before any conveyance by him, he would be entitled to the renewal money, whether the contract provided for payment to him by name or not. The reasoning in Fairfield Timber Co. v. Simmons and United Timber Co. v. Chapman is absolutely irreconcilable with the broad view, contended for, that the owner of the reversion is not entitled to the renewal money, where the original contract provides for payment to the grantor specifically by name, and not to the grantor and his heirs and assigns.

"Entertaining these views, I hold that the doctrine contended for should not be extended beyond the facts of the Cooler Case, and that the facts of the Cooler Case are different from the facts of the present case, and therefore the Cooler Case is not controlling

in this case. But, even if I should be mistaken in this view, I think Mr. Gruber is now estopped from claiming that he is not the proper party to receive the renewal money. Both parties acted on the theory that Mr. Gruber was the proper party to receive the renewal money. The Bellingers at no time have made any claim to it. There was no suggestion by Mr. Gruber at any time or by the Lumber Company that the Bellingers were entitled to the renewal money. It is true that Mr. Gruber testifies that he had in mind that he was not entitled to it, but he nowhere made any such statement to the Lumber Company.

"The whole course and conduct of the transaction between the two parties showed that they were resting their respective claims and rights upon the Bellinger deed. Mr. Gruber accepted the $30 and receipted for it, and the receipt itself shows on its face that it was to be a renewal of the rights under the Bellinger deed. It is true that Mr. Gruber testified that another receipt had been previously offered to him, which varied the Bellinger deed, and for that reason he declined to sign it; but, so far from this showing that Mr. Gruber, in accepting the renewal money, was not accepting it under the terms of the Bellinger deed, it rather shows to the contrary. It would appear that he objected to signing the original receipt because it varied the terms of the Bellinger deed, and, when the company did present him with a receipt which did not vary the terms of the Bellinger deed, he signed it and merely contented himself with inserting the words, 'the company desiring renewal for the one year as above stipulated.'

"The real controversy at that time between Mr. Gruber and the Lumber Company revolves around the effect of that addition to the receipt. Mr. Gruber is a lawyer, and no doubt was familiar with the case of Minshew v. Lumber Corporation, 98 S. C. 8, 81 S. E. 1027. In that case, the court laid down the rule that, where a party desired a timber extension, he must tender and pay the amount agreed upon in advance and indicate the additional number of years he would claim. That was understood to be the law at the time the company tendered to him and he accepted the $30 on April 12, 1917. He testifies that he asked Mr. Broadhurst whether they desired more than one year and that Mr. Broadhurst stated that the company desired one year, and he thereupon made the interlineation referred to. Thereupon, later, the Lumber Company, no doubt acting upon the advice of counsel, practically denied the

authority of Mr. Broadhurst to designate one year as the additional time the company desired.

"If the law had remained as stated in the Minshew Case, the real controversy between Mr. Gruber and the Lumber Company would have revolved around the right of Mr. Broadhurst to bind the company to his designation of one year, and upon that issue the authority of Mr. Broadhurst would be material, and it would be material to decide the conflicting testimony of Mr. Broadhurst and Mr. Gruber upon that point. But the Supreme Court, in a case decided shortly after that controversy arose, to wit, on April 30, 1917, in the case of Lumber Co. v. Johnson, 107 S. C. 147, 92 S. E. 271, held that it was not necessary to designate the number of years of extension desired, and in the later case of Bethea v. Lumber Co., 111 S. C. 97, 96 S. E. 717, approved the decision of Lumber Co. v. Johnson, and also held that the simple act of payment extended the right to cut.

"Under these decisions, all controversy as to the designation being for one year and as to any receipt at all being required is eliminated, and all questions relative to that controversy, therefore, fade from the case. In that controversy, it is clear that both parties looked to the Bellinger deed to ascertain their respective rights.

"The question therefore arises upon the estoppel. Mr. Gruber has cited a number of South Carolina cases and other authorities which have been carefully considered. Without taking them up specifically, I do not think that there is anything in them to prevent the application of the doctrine of estoppel in the present case. Mr. Gruber in his brief has the following quotation from Corpus Juris:

" 'Essential Elements—In General.—In order to constitute this kind of estoppel there must exist a false representation or concealment of material fact; it must have been made with knowledge, actual or constructive, of the facts; the party to whom it was made must have been without knowledge or the means of knowledge of the real facts; it must have been made with the intention that it should be acted upon; and the party to whom it was made must have relied on or acted upon it to his prejudice. To constitute an "estoppel in pais" there must concur an admission, statement, or act inconsistent with the claim afterward asserted, action by the other party thereon and injury to such other party. There can be no estoppel if either of these elements is want-

ing. They are each of equal importance.' 21 Corpus Juris, 1119, 1120.

"If we test the case by this statement of the law, I do not see that there can be any doubt about the estoppel. Mr. Gruber certainly accepted the money and certainly accepted it as the renewal money under the Bellinger deed. That act of receiving the money is certainly inconsistent with the claim that he now asserts that he was not the proper party but that it should be paid to the Bellingers. The mere fact that he did not actually say in words to the Lumber Company that he was the proper party can make no difference. The Lumber Company certainly acted upon the theory that they had paid the money to the proper party. If Mr. Bellinger had refused to accept the money on the ground that he was not the proper party to receive it, but the Bellingers, the company would undoubtedly have taken steps before their time expired to have made a tender to the Bellingers, and in such case Mr. Gruber would have been estopped from claiming that the Bellingers were not the proper parties. But nothing of that sort occurred. He accepted the money as if he stood in the shoes of the Bellingers and has never offered to return it.

"Mr. Gruber also contends, however, that the matter depends upon the construction of the Bellinger deed, and that the Lumber Company therefore could have construed the deed as well as he; but that is beside the mark. The point is that both of them, by their conduct and course of negotiation, construed the Bellinger deed as requiring the renewal money to be paid to Mr. Gruber and not to the Bellingers. It is a familiar rule that, where both parties to a contract act upon a certain construction of it, that construction is, in general, controlling, and I see no reason why the rule should not be applied to the case of subsequent grantees and others who are interested in the same contract, so that they should be bound by the construction that they have both adopted. Even if the original Bellinger deed, under the case of Richardson v. Cooler, requires that the renewal money should be paid to the Bellingers, I hold that the conduct of the parties in this case has been such that Mr. Gruber is estopped from making such claim, and that the tenders to him under all the circumstances of this case are good and binding upon him.

"Mr. Gruber's second contention is that the renewal money of $30 paid to him was not paid to him as renewal money under the terms of the Bellinger deed, but that the payment of that money and the giving by him of that receipt constituted an entirely new and different agreement, whereby he regranted to the Lumber Company the right to the timber and to another period of one year to take the same from the land. What I have said before in connection with the question of estoppel would sufficiently dispose of this question likewise.

"I cannot find anything in the whole course and conduct of the parties and their negotiations which would lend color to the idea that the parties thought they were entering into an absolutely new and independent contract, by which Mr. Gruber sold them the timber in question with the right of entry for one year for the purpose of removing the same. In addition to what has already been stated, it is to be noted that as far as the testimony shows, no part of the timber has ever been removed. The original price of the timber was $500, and it is not to be supposed that it had decreased in value.

"It would seem to be extremely unlikely, therefore, that Mr. Gruber would sell this timber by a new and independent contract for the sum of $30, even though the time of removal should be restricted to one year. This in itself is a strong circumstance to indicate that the parties really had in mind a carrying out of the Bellinger deed and not entering into a new and independent contract. Moreover, as has been pointed out, Mr. Gruber himself testified that he was unwilling to extend the terms of the Bellinger deed. He was apparently unwilling to enter into a new and independent contract. He was evidently standing upon the Bellinger deed and upon the Minshew Case. I cannot, under the testimony and the stipulated facts, find that the payment of the renewal money by the Lumber Company and the giving of the receipt by Mr. Gruber constituted any new and independent contract.

"It is therefore ordered, adjudged, and decreed that the title to the timber specified in the Bellinger deed on the tract of land described in the complaint as No. 4 and known as Rotherwood, is in the defendant the Savannah River Lumber Company, in accordance with the terms and conditions set forth in the Bellinger deed by reason of the payment to Mr. Gruber of the sum of $30 on April 12, 1917, and the tender to him of like amounts in subsequent years.

"It is further ordered, adjudged, and decreed that the complaint, as to the defendant the Savannah River Lumber Company, be and the same is hereby dismissed."

W. B. Gruber and M. P. Howell, both of Walterboro, S. C. (Howell & Fishburne and

J. C. Lemacks, all of Walterboro, S. C., on the brief), for appellants.

A. B. Lovett, of Savannah, Ga., and G. L. B. Rivers, of Charleston, S. C. (J. M. Moorer, of Walterboro, S. C., Hitch, Denmark & Lovett, of Savannah, Ga., Padgett & Moorer, of Walterboro, S. C., and Hagood, Rivers & Young, of Charleston, S. C., on the brief), for appellee.

Before WOODS, WADDILL, and ROSE, Circuit Judges.

PER CURIAM. We are not prepared to assent to the construction placed by the District Judge on the decision of the Supreme Court of South Carolina in Richardson v. Cooler, 115 S. C. 102, 104 S. E. 305. On that point it is not necessary to express an opinion. We adopt the reasoning of the District Judge on which he reaches the conclusion that Mr. Gruber is estopped, and on that ground affirm the judgment.

Affirmed.